*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0937**

State of Minnesota,
Respondent,

vs.

Randal Anthony Daher,
Appellant.

**Filed June 27, 2016
Reversed and remanded
Smith, Tracy M., Judge
Dissenting, Halbrooks, Judge**

Anoka County District Court
File No. 02-CR-14-7637

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Jon C. Audette, Assistant County Attorney, Anoka, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Halbrooks, Judge; and Smith, Tracy M., Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH, TRACY M.**, Judge

Appellant Randal Daher appeals his conviction of fleeing a police officer in a motor

vehicle. Daher was the driver of a car that picked up J.S., a woman who had been

shoplifting in a Kohl's store.  A police officer stopped Daher's car in the store's parking lot.  During the encounter, Daher twice moved the car before coming to a final stop.  Daher was charged with aiding and abetting theft and fleeing a police officer in a motor vehicle.  Before trial, the district court ruled that Daher's four prior theft convictions were "crimes of dishonesty" and thus admissible as impeachment evidence without consideration of whether their probative value was outweighed by their prejudicial effect.  Daher chose not to testify.  The district court also considered the admissibility of J.S.'s written statement denying Daher's knowledge of her theft and ruled that the statement was inadmissible hearsay.  Daher was acquitted of aiding and abetting theft but was convicted of fleeing a police officer in a motor vehicle.

Daher argues that the district court abused its discretion when it ruled his four prior theft convictions were admissible for impeachment and when it excluded the written statement as hearsay.  Daher also argues that there is insufficient evidence to sustain his conviction for fleeing a police officer in a motor vehicle.  We conclude that the district court abused its discretion in ruling that the prior theft convictions were crimes of dishonesty and further conclude that, in the particular circumstances of this case, the four prior theft convictions were not admissible—at least without mitigating measures—to impeach Daher's testimony.  As for the written statement, we conclude that the district court did not abuse its discretion in excluding it as inadmissible hearsay.  Because the district court abused its discretion when it held the four prior theft convictions admissible and its error was not harmless, we reverse and remand.

**FACTS**

On November 28, 2014, a loss-prevention employee at a Coon Rapids Kohl's department store observed a shopper, later determined to be J.S., whom he suspected of shoplifting. J.S. had a large empty purse and was selecting items without checking the size or price. She was also making frequent use of her cell phone, so the employee contacted the Coon Rapids Police Department in case she had a driver waiting for her outside the store.

Officer Michael Blair responded to the call and parked in the Kohl's parking lot in an unmarked vehicle. About five minutes after he arrived at the store, Officer Blair saw a dark Ford Taurus drive slowly by the store's side doors. The car approached Officer Blair's vehicle. The driver, who was later determined to be Daher, slowed the car to a "crawl." As the Ford Taurus slowly drove by the unmarked vehicle, Officer Blair noticed that all of its occupants were staring "very intently" at him. Officer Blair thought that Daher was "trolling the parking lot."

Daher eventually stopped his car near the handicapped parking area facing the store's east exit doors and remained there with his headlights on for approximately 10 to 15 minutes. The Kohl's employee told Officer Blair that J.S. was leaving the store. As she exited the store, Daher drove his car into the drive lane in front of the store and stopped. J.S. got into the car. Officer Blair drove his unmarked vehicle toward Daher's car, turned on the vehicle's red and blue emergency lights, and, before Daher could turn into a lane, moved in front of Daher's car to block his turn.

3

Officer Blair got out of his vehicle and gave Daher "loud and clear commands" to "turn off his car, put it in park, and put his hands up." Daher "started to raise his hands," nodded, and appeared to mouth "okay," but then reached down and reversed the car away from Officer Blair and then started to pull forward. Officer Blair got into his vehicle and moved forward to further block Daher, all the while continuing to yell "loud, clear commands."

Daher once again backed up and started to go forward. Officer Blair thought that Daher was "trying to get in between the curb and [his] vehicle," and inched his vehicle closer to Daher's car to block it. Daher stopped, put his car in park, and threw his hands up.[1] Another officer arrived in a marked squad car and pulled in front of Daher and to the side of Officer Blair's vehicle, completely blocking Daher's car. According to the other officer's testimony, as he approached the scene, it appeared that Daher was "trying to get around Officer Blair." After Daher's car was stopped, the officers removed the car's occupants and identified J.S. and Daher.

Daher was charged with one count of fleeing a police officer in a motor vehicle and one count of aiding and abetting theft. Before trial, the parties filed motions in limine. One item that respondent State of Minnesota desired to exclude was J.S.'s notarized statement written from jail:

> To whom it may concern:

---

[1] The parking lot security camera footage was admitted into evidence and substantially corroborates Officer Blair's testimony concerning the movement of Daher's car and Officer Blair's vehicle.

> I am writing this in regards of the incident on Nov. 28, 2014 at [Kohl's] department store in Coon Rapids MN. I am admitting that the pipe found was in fact mine not Randal Daher's and also he had no knowledge of the shoplifting that was taking place at that time. I don't think an innocent man should be punished for my wrongdoings. Thank you for your consideration in this matter and any further questions will be answered upon request. I am currently in custody at Anoka County Jail. 12-15-14.

The statement was signed and notarized on December 23, 2014.

The state argued that the notarized statement was inadmissible hearsay. Daher's counsel argued that it was "admissible under Minnesota Rules of Evidence." The state sought to appoint counsel for J.S. for fear that she would perjure herself because the written statement was "materially inconsistent" with other statements she had given. J.S. pleaded guilty to a misdemeanor theft charge and refused to testify in Daher's trial despite being subpoenaed "for fear of being asked questions that could possibly lead to incrimination." The district court excluded the statement on hearsay grounds regardless of whether J.S. testified.

The other relevant request in the state's motions in limine was to admit a number of Daher's prior convictions for impeachment purposes if he chose to testify. The district court deemed the four theft convictions admissible as crimes of dishonesty or false statement under Minnesota Rule of Evidence 609(a)(2) and conducted no further analysis. The state withdrew its motion to impeach with the other offenses. Daher chose not to testify at trial.

After a jury trial, Daher was found not guilty of aiding and abetting theft but was convicted of fleeing a police officer in a motor vehicle. The district court sentenced Daher

5

to 25 months in prison. At sentencing, Daher attempted to explain his conduct to the district court:

> But there was some confusion as to the commands that were given outside [Officer Blair's] vehicle. He was yelling put the car in park. And I thought he was yelling park the car. And people in my vehicle even said "he wants you to pull over, park the car." So I tried to pull to the sidewalk. And he jumped in and inched forward. And I did throw my hands up like he said, "what do you want me to do?" And the car is in park at this time. And he's yelling park the car. I put the car in park. I thought he was saying park the car.

Daher appeals.

## D E C I S I O N

### I.

Daher argues that the district court abused its discretion and committed reversible error when it ruled that Daher's four prior theft convictions were admissible for impeachment if Daher chose to testify. This court "will not reverse a district court's ruling on the impeachment of a witness by prior conviction absent a clear abuse of discretion." *State v. Hill*, 801 N.W.2d 646, 651 (Minn. 2011) (quotation omitted).

Prior convictions are admissible for impeachment purposes if no more than ten years have elapsed since the date of conviction or release from confinement and (1) the crime is a felony and the district court determines that its probative value outweighs its prejudicial effect or (2) the crime involves dishonesty or a false statement. Minn. R. Evid. 609(a), (b). In *State v. Jones*, 271 N.W.2d 534, 537-38 (Minn. 1978), the Minnesota Supreme Court articulated five factors to consider when evaluating the admissibility of prior convictions under rule 609(a)(1):

6

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

A district court must make a record of its application of the *Jones* factors. *State v. Davis*, 735 N.W.2d 674, 680 (Minn. 2007).

Here, the district court did not consider the *Jones* factors but ruled that the four theft convictions were admissible as crimes of dishonesty or false statement. *See* Minn. R. Evid. 609(a)(2). Not every theft, however, is a crime of dishonesty or false statement. *State v. Sims*, 526 N.W.2d 201, 202 (Minn. 1994). For example, misdemeanor theft by shoplifting is not a crime of dishonesty or false statement, but theft by swindle is. *Compare State v. Darveaux*, 318 N.W.2d 44, 48 (Minn. 1982) (concluding that theft by shoplifting is not a crime of dishonesty or false statement), *with State v. Norris*, 428 N.W.2d 61, 71 (Minn. 1988) (concluding that theft by swindle is a crime of dishonesty or false statement). The state did not present the underlying facts of Daher's prior theft convictions. With no information about the nature of Daher's prior theft convictions, the district court's blanket assumption that they were all admissible as crimes of dishonesty or false statement constituted a clear abuse of discretion. *See Hill*, 801 N.W.2d at 651.

Although Daher's prior theft convictions were not automatically admissible as crimes of dishonesty or false statement under rule 609(a)(2), this court may consider their admissibility under rule 609(a)(1) by analyzing the *Jones* factors. *See State v. Ross*, 491 N.W.2d 658, 659-60 (Minn. 1992) (declining to remand for a new trial when a burglary

7

conviction erroneously admitted under rule 609(a)(2) could have been admitted under the "balancing approach of [r]ule 609(a)(1)"). A district court's failure to consider the *Jones* factors on the record is harmless error so long as this court's review of the factors as applied to the convictions demonstrates that it would have been within the district court's discretion to admit the prior convictions for impeachment purposes. *State v. Swanson*, 707 N.W.2d 645, 655-56 (Minn. 2006). We now turn to an analysis of the *Jones* factors.

*Impeachment Value*

Daher argues that the theft convictions lack impeachment value and cites cases from this court in support of his argument. *See State v. Flemino*, 721 N.W.2d 326, 328 (Minn. App. 2006) (noting that the rationale for admitting prior felonies "that do not directly implicate honesty" to allow a jury to assess credibility has been heavily criticized); *State v. Norregaard*, 380 N.W.2d 549, 554 (Minn. App. 1986) (stating that "using prior drug convictions and terroristic threat convictions to impeach an accused is not favored"), *aff'd as modified*, 384 N.W.2d 449 (Minn. 1986). More recently, however, our supreme court has reiterated that "it is the general lack of respect for the law, rather than the specific nature of the conviction, that informs the fact-finder about a witness's credibility." *Hill*, 801 N.W.2d at 652. "[A]ny felony conviction is probative of a witness's credibility." *Id.* Daher's prior theft convictions therefore have impeachment value, and this factor favors admissibility.

*Date of Conviction and Subsequent History*

"[A] history of lawfulness since a conviction can limit a conviction's probative value; but, if a witness is convicted again or sent back to prison, then the witness's history

8

of lawlessness enhances an otherwise stale conviction's probative value." *State v. Zornes*, 831 N.W.2d 609, 627 (Minn. 2013) (quotation marks omitted). The admitted theft convictions occurred in May 2005, July 2007, October 2010, and May 2013. Although the May 2005 conviction was relatively old, Daher's "history of lawlessness enhances [the convictions'] probative value." *See id.* (quotation marks omitted). This factor favors admissibility.

***Similarity of Prior Convictions with Charged Crimes***

Daher contends that the similarity between the theft convictions and the charge for aiding and abetting theft weighs against admissibility. The state argues that this argument is moot because Daher was found not guilty of aiding and abetting theft. We disagree and consider the admissibility of the prior convictions at the point the district court did—at the pretrial stage when all charges were present and the ruling could have influenced Daher's decision to testify. "[I]f a prior conviction is similar to the crime a defendant is charged with, then the prejudicial effect of admitting the prior conviction increases." *Id.* "The danger when the past crime is similar to the charged crime is that the likelihood is increased that the jury will use the evidence substantively rather than merely for impeachment purposes." *State v. Bettin*, 295 N.W.2d 542, 546 (Minn. 1980).

Daher was charged with aiding and abetting theft. As the state acknowledged at the pretrial hearing, "the thefts . . . are the exact charges that are involved in this case so that weighs against" admitting them for impeachment. The similarity between Daher's prior theft convictions and the aiding-and-abetting-theft charge created a "heightened danger that the jury [would] use the evidence not only for impeachment purposes, but also

9

substantively." *See State v. Gassler*, 505 N.W.2d 62, 67 (Minn. 1993). To lessen the highly prejudicial effect of impeaching with convictions that are the same as or similar to the present charge, the district court may require the state to impeach with "an unspecified felony conviction," *Hill*, 801 N.W.2d at 652-53, or read a cautionary instruction "directing the jury to consider the prior conviction[s] only for impeachment purposes," *State v. Lloyd*, 345 N.W.2d 240, 247 (Minn. 1984). But, because the district court did not conduct the *Jones* analysis, its willingness to take these mitigating measures in this case is unknown. This factor weighs heavily against admissibility.

### *Importance of Defendant's Testimony*

Daher argues that the importance of his testimony weighs heavily against admissibility. "A defendant has a constitutional right to present his version of events to a jury." *Zornes*, 831 N.W.2d at 628. "[A] district court may exclude a defendant's prior convictions if their admission for impeachment purposes might cause the defendant not to testify *and* it is more important in the case to have the jury hear the defendant's version of the case than to allow him to be impeached." *Id.* (citing *Bettin*, 295 N.W.2d at 546)*.* But a defendant's decision not to testify due to the threat of impeachment is "not critical" if "his theory of the case was presented to the jury by . . . other means." *State v. Lund*, 474 N.W.2d 169, 173 (Minn. App. 1991); *see Gassler*, 505 N.W.2d at 67 (stating that the importance of a defendant's testimony supports excluding impeachment evidence but reasoning that this factor weighed in favor of admissibility where the defendant's version of events had been presented through other testimony).

10

Daher's argument strikes a logical chord. He claimed at his sentencing hearing and maintains on appeal that he would have testified that he misunderstood Officer Blair's instructions.[2] To be convicted of fleeing a police officer in a motor vehicle, the state was required to establish beyond a reasonable doubt that Daher possessed the specific intent to "attempt to elude a peace officer." *See* Minn. Stat. § 609.487, subd. 1 (2014); *State v. Johnson*, 374 N.W.2d 285, 288 (Minn. App. 1985) (noting that fleeing a police officer in a motor vehicle is a specific-intent crime), *review denied* (Minn. Nov. 18, 1985). The only evidence bearing on Daher's intent was the officers' testimony and the corroborating video evidence about Daher's slight movements back and forth during the stop. Daher's testimony, the equivalent of which was not presented, would have given the jury the alternative explanation of his intent. We cannot say that his decision to refrain from testifying was "not critical." *See Lund*, 474 N.W.2d at 173. The importance of Daher's testimony therefore weighs heavily against admissibility of the prior convictions. *See Zornes*, 831 N.W.2d at 628.

***Centrality of the Credibility Issue***

If a defendant's credibility "is a central issue," then the fifth *Jones* factor weighs in favor of admissibility. *Id.* Had Daher testified, the jury would have had to determine the

---

[2] The state also notes that Daher did not make an offer of proof as to the substance of his testimony during the pretrial hearing. It is true that our supreme court has indicated that, in the context of the *Jones* analysis, a defendant should make an offer of proof as to the substance of his testimony had it been provided. *See State v. Ihnot*, 575 N.W.2d 581, 587 n.3 (Minn. 1998); *Gassler*, 505 N.W.2d at 67. Here, however, the district court failed to conduct the *Jones* analysis, and Daher did eventually describe what his testimony would have been, albeit at his sentencing hearing. We are therefore not left to "assume" what the substance of Daher's testimony would have been. *See Ihnot*, 575 N.W.2d at 587.

credibility of his testimony. The centrality of the credibility issue weighs in favor of admitting the prior convictions.

After analyzing and weighing the *Jones* factors, we conclude that the district court could not have exercised its discretion to admit Daher's four prior theft convictions under rule 609(a)(1). We recognize that appellate courts rarely, if ever, question a district court's exercise of discretion to admit prior convictions under rule 609, even in close cases. *See, e.g.*, *Ihnot*, 575 N.W.2d at 587 (concluding that the district court did not abuse its discretion, even though the evidence may have been "at the margin of admissibility"). But when prior convictions are "at the margin of admissibility," a district court should "exercise great care in making the judgments called for by [r]ule 609." *Id.*; *see State v. Swinger*, 800 N.W.2d 833, 838 (Minn. App. 2011) (stating that a district court must individually weigh the probative value of each conviction when considering admissibility for impeachment), *review denied* (Minn. Sept. 28, 2011). Because of the mistake in characterizing the prior theft convictions as crimes of dishonesty or false statement, that care was not exercised here. This is not simply a case of a failure to make a record of the *Jones* analysis, *see, e.g.*, *State v. Vanhouse*, 634 N.W.2d 715, 721 (Minn. App. 2001) (affirming when the district court applied the correct standard but failed to make a record of the *Jones* factors and application of the *Jones* factors showed that the prior conviction was admissible), *review denied* (Minn. Dec. 11, 2001); rather, there was no *Jones* analysis and the prior theft convictions were held admissible under the wrong standard.

While we recognize that, despite this error, we may conduct our own *Jones* analysis, what sets this case apart is that it is not at all "clear that the [district] court could have

12

admitted the conviction[s] for impeachment purposes under the balancing approach of [r]ule 609(a)(1)." *See Ross*, 491 N.W.2d at 660. A district court's broad discretion under rule 609(a) is tempered by the requirement that the district court determine that the probative value of admitting the prior convictions outweighs the prejudicial effect. Minn. R. Evid. 609(a)(1). Here, the substantial prejudicial effect created by the similarity of four prior theft convictions to the aiding-and-abetting-theft charge and the importance of Daher's testimony outweigh the probative value for impeachment. Had the district court required impeachment with unspecified felony convictions or had the equivalent of Daher's proposed testimony been presented through other witnesses, the calculation might be different. As it is, we are left with the conclusion that ruling the four theft convictions admissible constituted a clear abuse of discretion.

Although the district court abused its discretion, reversal is not warranted if the error was harmless. *Vanhouse*, 634 N.W.2d at 721. "An error is harmless when there is no reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *Id.* (citing *State v. Post*, 512 N.W.2d 99, 102 n.2 (Minn. 1994))

Daher argues that the error was not harmless because his testimony would have allowed him to explain his intent. The state was required to prove that Daher acted with the specific intent to flee. "A person's intent must be determined from his words, if any, and actions in light of all the surrounding circumstances." *Johnson*, 374 N.W.2d at 288. Aside from the officers' testimony and the corroborating video evidence, the jury was presented with nothing from which to infer Daher's intent. The jury did not hear "his words." *See id.* We cannot conclude that "there is no reasonable possibility that the

13

wrongfully admitted evidence significantly affected the verdict" in Daher's case. *See Vanhouse*, 634 N.W.2d at 721.

In closing, we observe that we are not deciding that the prior theft convictions are inadmissible under rule 609(a)(1) in a retrial on the charge of fleeing a police officer. The aiding-and-abetting-theft charge on which Daher was acquitted no longer figures into the *Jones* analysis, and the calculus under *Jones* changes when the prior convictions are not similar to the charged crime. If the state desires to impeach Daher with prior convictions for felonies other than crimes of dishonesty or false statement, the district court will have to consider the *Jones* factors with respect to those convictions in the context of the remaining charge.

## II.

Daher also argues that the district court abused its discretion when it excluded J.S.'s notarized statement as hearsay. Although it is not necessary to reach this issue, we do so to provide guidance for retrial. *See State v. Mahkuk*, 736 N.W.2d 675, 683 (Minn. 2007). A district court's evidentiary rulings will not be reversed absent a clear abuse of discretion. *State v. Hooper*, 620 N.W.2d 31, 38 (Minn. 2000).

Daher contends that J.S.'s notarized statement was admissible as a statement against interest under Minnesota Rule of Evidence 804(b)(3). He asserts that the statement was important because it shows he did not know of the shoplifting and therefore lacked any motive to flee the police, making his conduct look less like flight and more like trying to comply with the officer's instructions. Daher did not present for the district court's consideration the possibility that J.S.'s statement was admissible as a statement against

14

interest. For that reason, it is questionable whether Daher's argument is properly before this court. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (noting that appellate courts generally will not decide issues not raised before the district court). Regardless, we conclude that the district court did not abuse its discretion when it excluded J.S.'s statement as inadmissible hearsay.

Rule 804 of the Minnesota Rules of Evidence provides an exception to the hearsay rule for a statement by an unavailable declarant

> which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Minn. R. Evid. 804(b)(3). If the statement exposes the declarant to criminal liability and exculpates the accused, it is inadmissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.*

The factors for evaluating a statement against interest's trustworthiness are:

> (1) whether other evidence corroborates the facts in the hearsay statement; (2) the extent to which the hearsay statement is consistent with the declarant's prior testimony and other statements; (3) the relationship between the declarant and other witnesses and parties, including the defendant; (4) whether the declarant has reason to fabricate the statement; (5) the overall credibility and character of the declarant; and (6) the timing of the statement.

*Ferguson v. State*, 826 N.W.2d 808, 813 (Minn. 2013). A statement against interest's trustworthiness "depends on the totality of the circumstances, and the relevance of each of the six factors will vary depending on the facts of each case." *Id.* at 814.

15

The apparent circumstances do not demonstrate the statement's trustworthiness. There was no corroboration of J.S.'s statement that Daher did not know about her theft. Moreover, it was alluded to at a pretrial hearing that J.S. had given "materially inconsistent statements" about the incident. Additionally, the relationship between J.S. and Daher makes the statement suspicious—J.S. was the principal and Daher was the charged accomplice in her theft. Furthermore, the state's motion in limine referenced six convictions that could potentially be used to impeach J.S.'s credibility.

Because the circumstances do not demonstrate the statement's trustworthiness, the district court did not abuse its discretion when it determined that J.S.'s written statement was inadmissible hearsay.

Due to our holding on the impeachment issue, we do not reach Daher's challenge to the sufficiency of the evidence.

**Reversed and remanded.**

**HALBROOKS**, Judge (dissenting)

I respectfully dissent. I would affirm Daher's conviction of fleeing a police officer in a motor vehicle because the district court's error in failing to apply the *Jones* factors is harmless.

We review a district court's ruling on admitting prior convictions for impeachment for a clear abuse of discretion. *State v. Ihnot*, 575 N.W.2d 581, 584 (Minn. 1998). A district court errs when it fails to apply the *Jones* factors, but the error is harmless if our application of the factors to the facts of the case demonstrates that it would have been within the district court's broad discretion to admit the convictions under the balancing approach contemplated by Minn. R. Evid. 609(a)(1). *State v. Swanson*, 707 N.W.2d 645, 655 (Minn. 2006). After weighing the probative value and the prejudicial effect of using Daher's prior convictions for impeachment, I would conclude that they were admissible under rule 609(a)(1).

"Evidence that a witness has been convicted of a felony is admissible for impeachment purposes if the probative value of the evidence outweighs its prejudicial effect." *State v. Flowers*, 734 N.W.2d 239, 259 (Minn. 2007); *see also* Minn. R. Evid. 609(a)(1). A district court weighs the probative value and prejudicial effect of prior felony convictions by balancing:

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*State v. Jones*, 271 N.W.2d 534, 538 (Minn. 1978).

I agree with the majority's analysis of the first, second, and third *Jones* factors: Daher's theft convictions have impeachment value, the dates of the convictions and his subsequent criminal history favor admissibility, and the similarity between Daher's theft convictions and the aiding-and-abetting charge weighs against admissibility. I diverge, however, from the majority's analysis of the fourth and fifth *Jones* factors. Those factors are often considered together and "[i]f credibility is a central issue in the case, the fourth and fifth *Jones* factors weigh in favor of admission of the prior convictions." *Swanson*, 707 N.W.2d at 655; *accord State v. Pendleton*, 725 N.W.2d 717, 729 (Minn. 2007). Daher maintains that, had he testified, he would have claimed that he misunderstood the officer's instructions, thus negating his intent to flee. Daher's testimony would have made his credibility a "central issue," meaning the fourth and fifth *Jones* factors favor admissibility. *See Swanson*, 707 N.W.2d at 655.

Consequently, only the third *Jones* factor weighs against admissibility; that alone is not enough to place the decision to admit the prior convictions under rule 609(a)(1) beyond the district court's discretion. *See State v. Stanifer*, 382 N.W.2d 213, 218 (Minn. App. 1986) ("Minnesota courts have been liberal in admitting prior convictions for impeachment even when the prior crime is the same as the crime charged."). I would therefore conclude that the district court's error was harmless and affirm Daher's conviction.