*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0098**

State of Minnesota,
Respondent,

vs.

Jamie Charlotte Blahowski,
Appellant.

**Filed October 31, 2016
Affirmed
Schellhas, Judge**

McLeod County District Court
File No. 43-CR-15-6

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael K. Junge, McLeod County Attorney, Daniel R. Provencher, Assistant County Attorney, Glencoe, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Susan J. Andrews, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Schellhas, Judge; and Bjorkman, Judge.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant seeks reversal of her conviction of fifth-degree controlled-substance crime, arguing that the district court erred by allowing the state to impeach her with a prior misdemeanor conviction. We affirm.

**FACTS**

Around 10:30 p.m. on January 1, 2015, Glencoe Police Officer Andrew Fiebelkorn observed appellant Jamie Blahowski driving a vehicle. Officer Fiebelkorn stopped the vehicle that Blahowski was driving because he knew that Blahowski's driver's license had been revoked. Officer Fiebelkorn approached the front passenger side of the vehicle and began speaking with Blahowski; almost immediately, he saw near the center console a baggie containing a crystalline substance that he suspected was methamphetamine. Officer Fiebelkorn radioed for backup, approached the front driver side of the vehicle, and instructed Blahowski to exit the vehicle. Blahowski verbally defied Officer Fiebelkorn's repeated commands to exit the vehicle and physically resisted his attempts to remove her from the vehicle. As he struggled with Blahowski, Officer Fiebelkorn saw her reach toward the center console and then toss her right hand over her right shoulder.

Glencoe Police Officer Benjamin Jarvi arrived on the scene and helped Officer Fiebelkorn remove Blahowski from the vehicle, handcuff her, and detain her. The officers then searched the vehicle for the baggie of suspected methamphetamine, weapons, and other contraband. Upon Officer Fiebelkorn's request, other officers arrived at the scene, including a K-9 unit, and assisted. During the search, Officer Jarvi located the baggie of

suspected methamphetamine on the floorboard of the rear passenger side of the vehicle. Officer Fiebelkorn secured the baggie of suspected methamphetamine, and subsequent chemical testing confirmed that the baggie contained 0.041 grams of methamphetamine.

Respondent State of Minnesota charged Blahowski with fifth-degree controlled-substance crime (methamphetamine possession), obstruction of legal process, and driving after revocation. Blahowski pleaded not guilty and demanded a jury trial. On the morning of trial, over Blahowski's objection, the district court ruled that the state could impeach Blahowski with a 2005 misdemeanor theft conviction. Blahowski nonetheless testified at trial, acknowledged the theft conviction on cross-examination, and repeatedly denied possessing methamphetamine at the time of the traffic stop. The jury found Blahowski guilty as charged, and the court sentenced her to imprisonment for 12 months and 1 day for her conviction of fifth-degree controlled-substance crime.[1]

This appeal follows.

## DECISION

"[Appellate courts] review a district court's decision to admit evidence of a defendant's prior convictions for an abuse of discretion." *State v. Williams*, 771 N.W.2d 514, 518 (Minn. 2009); *see also State v. Hill*, 801 N.W.2d 646, 651 (Minn. 2011) (stating that "[appellate courts] will not reverse a district court's ruling on the impeachment of a witness by prior conviction absent a clear abuse of discretion" (quotation omitted)).

---

[1] Although the presumptive disposition was a stay of execution, Blahowski asked the district court to execute her sentence.

Minnesota law provides:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment.

Minn. R. Evid. 609(a). Accordingly, a defendant who testifies at her own trial may be impeached by evidence that she previously was convicted of a misdemeanor if the misdemeanor involved dishonesty or false statement. *See id.* (providing for impeachment by evidence of conviction of a crime "involv[ing] dishonesty or false statement, *regardless of the punishment*" (emphasis added)); *State v. Zornes*, 831 N.W.2d 609, 626−27 (Minn. 2013) (stating that rule 609(a) standard "appl[ies] . . . to defendants who wish to testify in their own defense").

Evidence of a witness's prior conviction of a crime involving dishonesty or false statement is admissible for impeachment purposes so long as no more than ten years has elapsed between the conviction and the date of the charged offense. *See* Minn. R. Evid. 609(b) (providing that "[e]vidence of a conviction . . . is not admissible if a period of more than ten years has elapsed since the date of the conviction"); *State v. Ihnot*, 575 N.W.2d 581, 585 (Minn. 1998) (holding that "the date of the charged offense is the appropriate end point for the 10-year period that determines whether a conviction is stale under Minn. R. Evid. 609(b)"). Indeed, a district court must admit such evidence without regard to whether its probative value outweighs its prejudicial effect. *See State v. Bettin*, 295 N.W.2d 542,

4

545 (Minn. 1980) ("Crimes directly involving dishonesty or false statement are automatically admissible without regard to the seriousness of the punishment and without any balancing of probative value against prejudice being required."); *State v. Head*, 561 N.W.2d 182, 185–87 (Minn. App. 1997) (stating that "Minn.R.Evid. 609(a)(2) overrides the district court's general discretion to exclude relevant evidence under Minn.R.Evid. 403" and concluding that "district court erred by excluding evidence about [state's witness]'s two prior convictions for providing false information to police"), *review denied* (Minn. May 28, 1997).

If "dishonesty is an element of the crime" of conviction, evidence of the conviction "falls within the plain language of Minn.R.Evid. 609(a)(2)" and is admissible under the rule without regard to the manner in which the crime was committed. *Head*, 561 N.W.2d at 187. But even if dishonesty is not an element of the crime of conviction, evidence of the conviction is admissible under rule 609(a)(2) if the crime was committed in a manner involving dishonesty. *Cf. State v. Ross*, 491 N.W.2d 658, 659 (Minn. 1992) (noting that "[t]he difficulty in determining whether a particular crime falls under Minn.R.Evid. 609(a)(2) lies not in just the *type* of crime committed, but also in the *manner* in which the crime is carried out," characterizing as "very instructive" Judge Posner's analysis of Fed. R. Evid. 609(a)(2) in *Altobello v. Borden Confectionary Prods., Inc.*, 872 F.2d 215 (7th Cir. 1989), and recounting *Altobello*'s reasoning that "[i]n the case of [some] crimes, deceit is not an element, *but the manner in which the witness committed the offense may have involved deceit, and if that is shown the conviction is admissible*" (quotation omitted)).

5

Theft may be—but is not necessarily—a crime involving dishonesty or false statement, "depending on what kind of act of thievery was involved." *State v. Sims*, 526 N.W.2d 201, 202 (Minn. 1994). For example, misdemeanor theft by shoplifting generally is not a crime involving dishonesty or false statement, *State v. Darveaux*, 318 N.W.2d 44, 48 (Minn. 1982), while theft by swindle categorically is a crime involving dishonesty or false statement, *see State v. Norris*, 428 N.W.2d 61, 71 (Minn. 1988) (concluding that district court did not err in ruling that defendant's prior conviction of theft by swindle was admissible under Minn. R. Evid. 609(a)(2)); *State v. Swinger*, 800 N.W.2d 833, 836 (Minn. App. 2011) (stating that misdemeanor theft by swindle, theft by fraud, and theft by false representation were crimes involving dishonesty or false statement), *review denied* (Minn. Sept. 28, 2011).

In this case, the district court allowed Blahowski to be impeached on cross-examination by reference to her 2005 misdemeanor theft conviction. The court reasoned that evidence of the conviction was admissible as "a crime of moral turpitude because it's a crime of dishonesty." Blahowski argues that the district court erred by admitting her misdemeanor conviction without making the requisite determination, under Minn. R. Evid. 609(a)(2), that the crime of conviction involved dishonesty or false statement. We agree. The record reflects no information regarding "what kind of act of thievery was involved" in the crime of conviction, *Sims*, 526 N.W.2d at 202, or "the *manner* in which the crime [wa]s carried out," *Ross*, 491 N.W.2d at 659. Consequently, the court had no apparent basis for its conclusion that Blahowski's misdemeanor theft was a crime involving dishonesty or false statement.

6

But Blahowski did not argue in district court that evidence of her 2005 misdemeanor theft conviction was not admissible under Minn. R. Evid. 609(a)(2). Instead, she argued against impeachment by incorrectly claiming that "all evidentiary rulings are subject to Rule 403" and contending that, because her theft conviction was "within a few days of . . . being ten years old," the probative value of evidence of that conviction was outweighed by its unfairly prejudicial impact. The state argues that our review of the district court's impeachment ruling therefore is limited to review for plain error. Because we conclude that any error in the district court's impeachment ruling did not affect Blahowski's substantial rights, we do not decide whether Blahowski's objection in district court was sufficient to preserve the assignment of error that she makes on appeal. *See* Minn. R. Crim. P. 31.01 ("Any error that does not affect substantial rights must be disregarded."), .02 ("Plain error affecting a substantial right can be considered by the court . . . on appeal even if it was not brought to the trial court's attention."); *State v. Reed*, 737 N.W.2d 572, 583–84 (Minn. 2007) (explaining that under both harmless-error review and plain-error review, error is not reversible unless it affected defendant's substantial rights).

"In most situations, an error affects substantial rights if the error was prejudicial and affected the outcome of the case. Put another way, an error affects a defendant's substantial rights if there is a reasonable likelihood that the error had a significant effect on the verdict." *State v. Finch*, 865 N.W.2d 696, 703 (Minn. 2015) (quotations and citation omitted); *see also State v. Matthews*, 800 N.W.2d 629, 634 (Minn. 2011) (stating that "[a] plain error affects the substantial rights of the defendant when there is a reasonable

7

likelihood that the error substantially affected the verdict" and explaining that this analysis "is the equivalent of a harmless error analysis" (quotation omitted)).

In determining whether a reasonable likelihood exists that erroneously admitted evidence significantly affected the verdict, appellate courts may consider such factors as the relative strength of properly admitted inculpatory and exculpatory evidence, the manner in which the erroneously admitted evidence was presented to the jury, whether the prosecutor referenced the erroneously admitted evidence in closing arguments, and whether the district court gave a limiting instruction. *See State v. Bolte*, 530 N.W.2d 191, 198–99 (Minn. 1995) (concluding that no prejudice resulted from erroneous admission of other-crime evidence after considering "a number of factors including the overwhelming evidence linking the defendant to the [crime of conviction]; the fact that the defense's evidence was weak and of highly doubtful credibility; the fact that the prosecutor did not rely on the evidence in question in his closing argument; the fact that the trial court gave an appropriate cautionary instruction when requested, both during the trial and as part of the final instructions; and the fact that other other-crime evidence was properly admitted"); *State v. Jackson*, 764 N.W.2d 612, 620 (Minn. App. 2009) ("In evaluating the reasonable likelihood that the erroneously admitted evidence significantly affected the verdict, this court must consider the persuasiveness of that evidence. . . . Our analysis must also consider the manner in which the evidence was presented."), *review denied* (Minn. July 22, 2009). Appellate courts presume that a jury follows a district court's limiting instruction. *State v. Thao*, 875 N.W.2d 834, 839 (Minn. 2016).

Blahowski argues that the district court's impeachment ruling "substantially influenced the jury's decision to convict [her]" of fifth-degree controlled-substance crime because "[her] defense had no chance with the jury once her testimony was wrongly—and unfairly—impeached with the highly prejudicial evidence of her prior conviction." Blahowski points to other evidence and argument presented at trial that purportedly bolstered her testimony that she possessed no methamphetamine at the time of the traffic stop, and she suggests that the jury would have believed her testimony if she had not been impeached with evidence of her 2005 misdemeanor theft conviction.

But Blahowski's impeachment was limited to a single, brief exchange with the prosecutor on cross-examination:

> Q: Ms. Blahowski, have you ever been convicted of theft?
> A: Yes.

This exchange was immediately followed by a limiting instruction by the district court, which provided: "Any evidence concerning a prior conviction of the defendant is admitted only for your consideration in deciding whether she's telling the truth in this case. You must not consider a prior conviction as evidence of the defendant's character or conduct, except as you may think it reflects on believability." And the prosecutor did not mention Blahowski's theft conviction during his opening statement or his closing argument.

The district court's impeachment ruling did not prevent Blahowski from testifying, and Blahowski's testimony that she possessed no methamphetamine at the time of the traffic stop was in direct conflict with the state's evidence, including the testimony of Officers Fiebelkorn and Jarvi and the squad-car recording of the traffic stop and its

9

aftermath. Finally, during cross-examination, Blahowski acknowledged her guilt of the crime of driving after revocation and admitted that she "may have" kicked a police officer as she "physically resisted" Officer Fiebelkorn's efforts to remove her from the vehicle. On these facts, we conclude that no reasonable likelihood exists that the evidence of Blahowski's prior conviction significantly affected the jury's verdict on the charge of fifth-degree controlled-substance crime.

**Affirmed.**